UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TRAVIS SANTELL LONGMIRE,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

Case No. 2:19-cv-103

Honorable Paul L. Maloney

# **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims arising under 42 U.S.C. § 1983 because the Michigan Department of Corrections is immune from suit and Plaintiff fails to state a claim against the other defendants. The Court declines to exercise jurisdiction over any claims arising under state law.

**Discussion**

I.      **Factual allegations**

Plaintiff Travis Santell Longmire is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, where the events giving rise to his complaint occurred. Plaintiff sues the MDOC and the following MDOC employees at URF: Warden Connie Horton; "GOA7" Randy Masker; Account Technician Dawn Brown; and Business Manager Edron Forrester. He also sues Grievance Manager Richard D. Russell, who works for the MDOC at its central office in Lansing, Michigan.

Plaintiff purports to name as additional plaintiffs several family members and acquaintances, but none of these individuals signed the complaint.

Plaintiff alleges that in April 2018, he wrote a grievance about the fact that he and his family and friends had not been receiving letters that they sent to each other. This problem continued for another six months, so Plaintiff wrote another grievance about the issue in November 2018. He contends that the mailroom staff "under GOA7 Randy Masker," as well as the accounting staff "under Account Technician Dan Brown," "had been lying about sending [his] indigent mail," and failed to "send notice of the refusal" to send the mail. (Compl., ECF No. 1, PageID.6.) He reached this conclusion, in part, because he was approved for a disbursement for indigent mail he sent in August 2018, but he received his letters back in October 2018. He later discovered that the approval was a "lie"; in reality, the mail was rejected due to a lack of sufficient funds in his prison account the day after the mail was received in the mail room. (*Id.*, PageID.7.)

Plaintiff also alleges that prison officials opened and searched his letters before returning them to him, in accordance with MDOC Policy Directive 05.03.118 ¶ W, which provides

that mail that cannot be processed due to insufficient prisoner funds is to be searched before its return to the prisoner.

On October 17, 2018, Plaintiff reached his limit for indigent postage loans for the month of October. A week later, he gave a prison official three letters for mailing. Later, he apparently realized that he had already reached his indigent loan limit, so he filed a grievance asking for the letters to be returned so that he could re-mail them. In response to the grievance, an unidentified official told him that the letters had been mailed free of charge. Plaintiff, however, alleges that his friends and family never received these letters, or any other letters from Plaintiff, for all of 2018 and part of 2019.

Plaintiff appealed the grievance response to step II of the grievance process. Warden Horton allegedly responded to his appeal in a manner indicating that Plaintiff had been given false information. His letters were not sent free of charge; Plaintiff was charged 31 cents for mailing all three of them.

Plaintiff asserts three claims. First, he contends that Defendants Masker, Brown, Forrester, Horton, and Russell acted with deliberate indifference to his constitutional rights under the First and Fourteenth Amendments by "turning a blind eye" to what happened to him. (*Id.*, PageID.7.)

Second, Plaintiff asserts that Defendants violated the rights of the intended recipients of his letters because they did not receive his mail. Plaintiff seeks relief on their behalf.

Third, Plaintiff challenges the MDOC policy requiring officials to search outgoing mail that is returned to a prisoner due to insufficient funds. Plaintiff contends that there is no "evidence" that outgoing mail poses a security risk, let alone that his mail posed a security risk simply because he attempted to send it without sufficient funds to do so. (*Id.*, PageID.10.) Plaintiff

contends that the MDOC's policy is unconstitutional, and that the MDOC is liable for maintaining the policy. Plaintiff also contends that Russell is liable for acting "with final decision-making authority" with regard to his mail. (*Id.*)

As relief, Plaintiff seeks an unspecified injunction and damages.

## II. Additional Plaintiffs

Plaintiff purports to bring this action on behalf of himself and other individuals who have not signed the complaint. In general, a party may plead and conduct his or her case in person or through a licensed attorney; he may not act in a representative capacity on behalf of others. 28 U.S.C. § 1654; *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009). Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). In addition, an adult litigant who wishes to proceed *pro se* must personally sign the complaint. *See Steelman v. Thomas*, No. 87-6260, 1988 WL 54071, at *1 (6th Cir. May 26, 1988); *see also* Fed. R. Civ. P. 11(a) (stating that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record . . . or by a party personally if the party is unrepresented").

Only Plaintiff Longmire signed the complaint. He is not an attorney. Consequently, his signature is not effective to bring claims on behalf of other individuals identified as plaintiffs. Thus, the Court does not recognize the other individuals as plaintiffs in this action.

Furthermore, Plaintiff does not have standing to assert the rights of these other individuals. *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his own claims. He cannot bring claims asserting the constitutional rights

4

of other people. Thus, to the extent Plaintiff's claims are based on the rights of his friends and family, he does not state a viable claim.

### III. Class Action

Plaintiffs also purports to bring a claim on behalf of a "class" of individuals comprising the "intended mail recipients" of his letters to his friends and family. (Compl., PageID.8.) The Court construes this assertion as a request for class certification.

For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001). Furthermore, Plaintiff is not a member of the class that he intends to represent. He is not an intended recipient of his own letters. Accordingly, for both of these reasons, he is not an appropriate representative of the asserted class. Therefore, the Court will not grant Plaintiff's implied request for class certification.

### IV. Immunity

Plaintiff may not maintain an action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment

5

immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court will dismiss the MDOC because it is immune from suit.

## V.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendants Masker, Brown, Forrester, Horton, and Russell**

Plaintiff does not allege specific facts about Defendants Masker, Brown, Forrester, Horton, and Russell. He merely contends that they were deliberately indifferent to his rights, that Defendants Masker and Brown supervised other officials who handled Plaintiff's mail and his requests for disbursement of funds, and that Defendant Russell "acted with final decision-making authority when acting with deliberate indifference." (Compl., PageID.10.) The exhibits to the complaint provide a few more details. Apparently, Defendants Masker, Brown, Forrester, Horton, and Russell all responded to Plaintiff's grievances about the handling of his mail, as part of the prison grievance process. (*See* ECF No. 3-1, PageID.63, 67, 69, 71, 76, 77, 80, 84-99.) Such conduct is not sufficient to give rise to liability under § 1983.

7

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Masker, Brown, Forrester, Horton, and Russell engaged in any active unconstitutional behavior. He does not allege that they were personally involved in searching or otherwise interfering with his mail. Accordingly, he fails to state a claim against them.

### B. Challenge to MDOC Policy Directive 05.03.118 ¶ W

Plaintiff also contends that the MDOC's policy of searching mail that is returned due to insufficient funds, MDOC Policy Directive 05.03.118 ¶ W**,** violates his rights under the First, Fourth and Fourteenth Amendments. That policy provides, in relevant part:

> If it is determined that a prisoner's outgoing mail cannot be processed due to insufficient postage, failure of the prisoner to sign a disbursement authorization, mail returned as undeliverable, or other reason unrelated to the content of the mail, the mail shall be searched in the same manner as incoming mail prior to its return to the prisoner.

*Id.* The "search" referred to in this provision involves opening and inspecting the mail "to determine if it contains money, controlled substances, or other physical contraband." *Id.* ¶ DD.

Plaintiff argues that, "by its very nature," outgoing personal correspondence from prisoners does not pose a security threat, and does not need to be searched, particularly when it does not leave the facility. (Compl., PageID.10.) The Court generously construes this claim as one against Defendant Russell in his official capacity.

Plaintiff fails to state a claim. With respect to the First Amendment, courts have long accepted the practice of searching a prisoner's outgoing and incoming nonlegal mail. Although inmates have a First Amendment right to communicate with the outside world by sending and receiving mail, *see Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 85 (1987), that right is not absolute. Prisons may restrict an inmate's right to send mail so long as their policies are "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Plaintiff apparently believes that outgoing mail does not pose a security threat, but that is not the case. Prison officials have a legitimate interest in search outgoing mail in order to prevent the transmission of "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh*, 490 U.S. at 412.

Many courts have held that prison officials do not violate the First Amendment by inspecting an inmate's non-legal mail. *See, e.g.*, *Caldwell v. Beard*, 305 F. App'x 1, 4 (3d Cir. 2008) (prison officials did not violate the First Amendment by reading inmate's outgoing mail to his family); *Altizer v. Deeds*, 191 F.3d 540, 547-48 (4th Cir. 1999) ("Without question, the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests," and therefore does not violate the First Amendment.); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans,

contraband, threats, or evidence of illegal activity); *Stow v. Grimaldi*, 993 F.2d 1002, 1004-05 (1st Cir. 1993) (state prison practice requiring that non-privileged outgoing mail be submitted for inspection in unsealed envelopes did not violate prisoner's constitutional rights); *United States v. Whalen*, 940 F.2d 1027, 1035 (7th Cir. 1991) ("[I]t is well established that prisons have sound reasons for reading the outgoing mail of their inmates."); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding prison regulations authorizing the inspection of incoming and outgoing nonlegal mail); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) ("Non-privileged inmate mail is clearly not immune to inspection, thus such inspections cannot give rise to civil rights violations."); *see also Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) ("[F]reedom from censorship is not equivalent to freedom from inspection or perusal.").

Consistent with the decisions of these other courts, the Court of Appeals for the Sixth Circuit has upheld a policy in federal prisons that authorized the inspection of all incoming and outgoing non-legal correspondence to and from prisoners. *Meadows v. Hopkins*, 713 F.2d 206, 208 (6th Cir. 1983). For similar reasons, the MDOC's policy authorizing the search of Plaintiff's ordinary personal correspondence does not violate his rights under the First Amendment.

In addition, the MDOC's policy does not violate the Fourth Amendment. "A person who claims that his Fourth Amendment rights were violated by an unreasonable search must establish that he or she had a subjective expectation of privacy in the premises searched and that society would recognize his or her expectation as legitimate." *United States v. Harris*, 255 F.3d 288, 294 (6th Cir. 2001). Conversely, "[o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (quoting *United States v. Jacobsen*, 466 U.S. 109, 123 (1984)).

The Supreme Court long ago held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). The same principle applies to searches of a prisoner's personal property, such as his personal mail. *See Threet v. Germond*, No. 84-1627, 1986 WL 16807, at *2 (6th Cir. Apr. 9, 1986) (applying *Hudson* to the search of a prisoner's mail). In other words, prisoners do not have a legitimate expectation of privacy in their ordinary, nonlegal correspondence. Thus, a prison official's search of such correspondence is not an unreasonable search under the Fourth Amendment. Consequently, the application of the MDOC's policy to Plaintiff's mail does not implicate his rights under the Fourth Amendment.

Finally, the MDOC's policy does not violate Plaintiff's rights under the Fourteenth Amendment. Plaintiff apparently contends that Defendants have deprived him of due process. (*See* Br. in Supp. of Compl., ECF No. 3, PageID.36.) The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Plaintiff does not have a protected liberty or property interest in sending or receiving personal correspondence without inspection by prison staff. Accordingly, he does not state a due process claim with regard to the policy. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.").

In the brief that Plaintiff submitted with his complaint, Plaintiff argues that Defendants deprived him of due process by failing to give him adequate notice that his letters were not sent. This claim does not relate to the MDOC's policy, however, and Plaintiff does not identify

11

the defendants who allegedly withheld his mail or failed to give him notice. As indicated above, he does not allege that the individuals named in the complaint were involved in withholding or rejecting his mail. Accordingly, Plaintiff's alternative basis for a due process claim is insufficient to proceed against Defendants.

### C. Violation of Prison Policy

Plaintiff further contends that Defendants did not comply with paragraphs VV and WW of MDOC Policy Directive 05.03.118, or with Michigan Administrative Rule 791.331, when they filed to provide "notice or procedural safeguards" in connection with Plaintiff's apparently inability to send or receive mail to and from his friends and family. (Compl., PageID.38.)

Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state policies and rules therefore does not state a claim under § 1983.

### VI. Supplemental Jurisdiction

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the

court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the claims arising under 42 U.S.C. § 1983 will be dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendant MDOC is immune from suit and Plaintiff fails to state a claim against the other defendants. The Court declines to certify a class action or to exercise supplemental jurisdiction over Plaintiff's state-law claims. Consequently, the state-law claims, if any, will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   July 22, 2019                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge